**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| FRANK SINKULA, On Behalf of Himself and All Others Similarly Situated, )<br><br>    Plaintiff, )<br><br>    v. )<br><br>SELECT INCOME REIT, DONNA D. FRAICHE, WILLIAM A. LAMKIN, JEFFREY P. SOMERS, ADAM D. PORTNOY, and DAVID M. BLACKMAN, )<br><br>    Defendants, ) | Case No.  1:18-cv-12389<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Frank Sinkula ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.      Plaintiff brings this class action on behalf of the public stockholders of Select Income REIT ("SIR" or the "Company") against the members of its Board of Trustees (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which SIR will be acquired by Government Properties Income Trust ("GOV") through GOV's wholly-owned subsidiary GOV MS REIT ("Merger Sub") (the "Proposed Transaction").

2.      On September 17, 2018, SIR and GOV issued a joint press release announcing

they had entered into an Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, SIR stockholders will be entitled to receive 1.04 shares of GOV common stock per SIR common share (the "Merger Consideration"). Under the Merger Agreement, the Merger Consideration is fixed and will not be adjusted to reflect changes in the market price of the GOV common shares or the SIR common shares prior to the effective time. Based on the $16.98 closing price of GOV common shares on September 14, 2018, the exchange ratio represented approximately $17.57 for each SIR common share. As of November 8, 2018, the closing price of GOV common shares had declined to $9.25, with the Merger Consideration valued at approximately $9.62 per SIR common share.

3.      On October 1, 2018, GOV and SIR filed a joint proxy statement/prospectus on Form S-4 (as amended on October 26, 2018, November 9, 2018, and November 15, 2018, the "Registration Statement") with the SEC. The Registration Statement, which recommends that SIR stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) SIR's and GOV's financial projections, relied upon by the Company's financial advisor, UBS Securities LLC ("UBS") in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by UBS; (iii) the background process leading to the Proposed Transaction; and (iv) UBS's potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as SIR stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

4.      In short, unless remedied, SIR's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information

concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the December 20, 2018 stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.       This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.       This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.       Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  SIR is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.       Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of SIR common stock.

9.       SIR is a Maryland corporation and maintains its principal executive offices at Two Newton Place, 255 Washington Street, Suite 300, Newton, Massachusetts 02458.  SIR is a real estate investment trust ("REIT"), which owns properties that are primarily net leased to single

tenants.  SIR is managed by The RMR Group Inc.'s operating subsidiary, The RMR Group LLC (together, "RMR"), an alternative asset management company that is headquartered in Newton, Massachusetts.  The Company's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "SIR."

10.    Defendant Donna D. Fraiche ("Fraiche") has been an Independent Trustee of the Company since 2012.

11.    Defendant William A. Lamkin ("Lamkin") has been an Independent Trustee of the Company since 2012.

12.    Defendant Jeffrey P. Somers ("Somers") has been an Independent Trustee of the Company since 2012.  Defendant Somers also serves as an Independent Trustee of GOV.

13.    Defendant Adam D. Portnoy ("Portnoy") has been a Managing Trustee of the Company since its formation in 2011.  Defendant Portnoy is President and Chief Executive Officer ("CEO") of RMR.  Defendant Portnoy also serves as a Managing Trustee of GOV and is on the boards of trustees of several other companies managed by RMR.

14.    Defendant David M. Blackman ("Blackman") has been SIR's President since 2012 and CEO and a Managing Trustee of the Company since 2018.  Defendant Blackman previously served as SIR's Chief Operating Officer from 2012 until 2018.  Defendant Blackman is also President and CEO of GOV and Executive Vice President of RMR.

15.    The defendants identified in paragraphs 10-14 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

16.    GOV is a Maryland corporation, with its principal executive offices located at Two Newton Place, 255 Washington Street, Suite 300, Newton, Massachusetts 02458.  GOV is a

REIT, which primarily owns properties located throughout the United States that are majority leased to government tenants and office properties in the metropolitan Washington, D.C. market area that are leased to government and private sector tenants. GOV is also managed by RMR. GOV's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "GOV."

17.    Merger Sub is a Maryland corporation and a direct wholly-owned subsidiary of GOV.

18.    RMR is an alternative asset management company founded in 1986 that invests in real estate and manages real estate related businesses. As of June 30, 2018, RMR had approximately $30.0 billion of total assets under management, including more than 1,700 properties.

19.    Industrial Logistics Properties Trust ("ILPT") is a Maryland REIT and SIR's majority owned consolidated subsidiary.

## CLASS ACTION ALLEGATIONS

20.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own SIR common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

21.    This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.

As of October 1, 2018, there were 89,550,528 shares of SIR common stock outstanding. All members of the Class may be identified from records maintained by SIR or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

22.    Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)    Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)    Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

23.    Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

24.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

25.    Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and Sale Process

26.     SIR is a REIT that was organized under Maryland law in 2011.  SIR primarily owns single tenant, net leased properties. As of September 30, 2018, SIR's consolidated portfolio consisted of 368 buildings, leasable land parcels and easements with approximately 45.8 million rentable square feet that were approximately 95.8% leased (based on rentable square feet).

27.     In mid-2017, SIR determined to contribute its 226 industrial properties located in Hawaii and 40 additional industrial and logistics properties located in 24 other states to its new wholly owned subsidiary, ILPT, and to pursue an initial public offering ("IPO") of ILPT.  The ILPT IPO was completed on January 17, 2018.  After its IPO, ILPT remained a consolidated subsidiary of SIR, with SIR owning 45,000,000 ILPT common shares, representing approximately 69.2% of the outstanding ILPT common shares.

28.     At a May 16, 2018, SIR Board meeting, SIR management discussed with the Board a potential combination transaction between SIR and GOV, which would be preceded by GOV's sale of all of the SIR common shares that GOV owns and SIR's distribution to its stockholders of all of the ILPT common shares that SIR owns.  In light of SIR's relationship and historical and continuing transactions with GOV and RMR, including the following: GOV's position as SIR's then-largest stockholder; defendant Portnoy is a managing trustee of both GOV and SIR; defendant Blackman serves as president and CEO of both GOV and SIR and as a managing trustee of SIR; defendant Somers serves as an independent trustee of both GOV and SIR; and that RMR provides management services to both GOV and SIR, the Board determined that further consideration of a potential combination would be by a special committee, comprised solely of the independent trustees of SIR.

29.     On June 21, 2018, the SIR special committee entered into a formal engagement agreement with UBS.

30.     On the morning of July 16, 2018, the Board held a meeting during which UBS provided a preliminary overview of the potential combination transaction between SIR and GOV, including an overview of financial information for GOV, SIR and ILPT.

31.     On July 26, 2018, the SIR special committee met with members of SIR management to review and discuss information regarding the five-year financial projections that had been provided to UBS by members of SIR and GOV management, respectively, in connection with the potential transaction and the process by which each company's financial projections were prepared.   During this discussion, members of SIR management informed the SIR special committee that the projections provided to UBS were prepared in the ordinary course, primarily by asset managers and real estate service professionals.

32.     The following day, the SIR special committee met to receive a presentation prepared by UBS analyzing the potential combination of GOV and SIR, including preliminary financial analyses of SIR (on a standalone basis excluding ILPT) and GOV.  The other members of SIR's Board and members of SIR management attended the initial part of this meeting to hear the UBS presentation.  After the other members of SIR's Board and members of SIR management left the meeting, the SIR special committee and UBS discussed the range of exchange ratios implied by the UBS analysis and the financial effect on SIR stockholders of the proposed transaction with GOV at various exchange ratios.  The SIR special committee authorized UBS to contact GOV's financial advisor, Citigroup Global Markets Inc. ("Citi"), and propose an exchange ratio of 0.9 of one SIR common share for each GOV common share.

33.     On July 27, 2018, UBS and Citi discussed possible exchange ratios for the

potential combination of GOV and SIR during which UBS proposed an exchange ratio of 0.9 of one SIR common share for each GOV common share, or 1.1 GOV common shares for each SIR common share.

34.     Later on July 27, 2018, Citi contacted UBS and to counter with an exchange ratio of 0.9 of one GOV common share for each SIR common share.

35.     Following a SIR special committee meeting, on July 28, 2018, UBS contacted Citi and proposed an exchange ratio of 1.05 GOV common shares for each SIR common share.

36.     On July 31, 2018, Citi contacted UBS and proposed an exchange ratio of 1.03 GOV common shares for each SIR common share.

37.     After further negotiation, on August 1, 2018, UBS contacted Citi and proposed an exchange ratio of 1.04 GOV common shares for each SIR common shares which was accepted on behalf of GOV's special committee.

38.     On September 14, 2018, UBS delivered its fairness opinion to the SIR special committee and the Board.  That same day the SIR special committee and the Board determined to enter into the Merger Agreement with GOV.  Later that evening, SIR and GOV executed the Merger Agreement.

**The Proposed Transaction**

39.     On September 17, 2018, SIR and GOV issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> Newton, MA (September 17, 2018):  Government Properties Income Trust (Nasdaq: GOV) and Select Income REIT (Nasdaq: SIR) today announced that they have entered a definitive agreement to merge which will create a real estate investment trust, or REIT, focused on owning, operating and leasing office buildings primarily leased to single tenants and high credit quality tenants like government entities.

The surviving company in the merger will be GOV and it will change its name to Office Properties Income Trust, or OPI, upon closing the merger. OPI will continue to be managed by the operating subsidiary of The RMR Group Inc. (Nasdaq: RMR). OPI will be listed on the Nasdaq and the ticker symbol "OPI" has been reserved for the company's common shares. On an adjusted(1) basis, OPI will own a portfolio of high quality office buildings with the following characteristics:

> (1)  As of June 30, 2018, excluding Industrial Logistics Properties Trust, or ILPT, and adjusted for the sale of SIR common shares owned by GOV and for 51 buildings containing 3.8 million square feet that were sold subsequent to the end of the second quarter or are expected to be sold prior to year-end 2018 for total gross proceeds of approximately $450.3 million.213 properties containing 30.2 million square feet with undepreciated gross assets of $6.1 billion;

- 66% of OPI's annualized rent paid by tenants that are investment grade rated(2);

- Weighted average remaining lease term, by revenue, of 6.1 years;

- Occupancy of 92%; and

- Properties diversified across 38 states and the District of Columbia.

Mark Kleifges, GOV's Managing Trustee and Chief Financial Officer, made the following statement about today's announcement:

"This transaction addresses a number of the challenges that GOV has been facing, including a high dividend payout ratio, a concentration of near term lease expirations and a high tenant concentration. We believe GOV shareholders will benefit from this transaction by having a well covered dividend set to a long term sustainable level, extending and better laddering the lease expiration schedule, increasing scale and enhancing diversification. OPI also plans to sell assets post closing to further strengthen its credit metrics."

David Blackman, SIR's Managing Trustee, President and Chief Executive Officer made the following statement about today's announcement:

"GOV, SIR and ILPT have complicated ownership structures, with GOV as SIR's largest shareholder and SIR as the controlling shareholder of ILPT. This transaction will eliminate the cross ownership and increase ILPT's public common share float, which may benefit SIR shareholders who receive a distribution of ILPT shares. Further, OPI will have increased scale, greater diversification and a broader investment strategy, which we believe will create a leading national office REIT focused on buildings leased to single tenants and high credit quality tenants like government entities."

(2)    As of June 30, 2018.  Includes: a) investment grade rated tenants; b) tenants with an investment grade rated parent entity that guarantees lease obligations; and/or c) tenants with an investment grade rated parent entity that does not guaranty lease obligations.

The merger will be a stock for stock exchange whereby SIR shareholders will receive 1.04 shares of GOV for each common share of SIR based upon a fixed exchange ratio.  Following the merger, GOV and SIR shareholders will own approximately 52% and 48% of OPI, respectively.

As a condition of the merger, GOV will sell all 24.9 million of the common shares it owns in SIR.  Also as a condition of the merger, after receiving shareholder approval for the merger and prior to its closing, SIR will distribute as a special dividend all 45 million of the common shares it owns in ILPT to SIR shareholders.  ILPT is a REIT that is focused on owning warehouse distribution and e-commerce fulfillment facilities throughout the United States.  These actions will eliminate the cross ownership among GOV, SIR and ILPT.

SIR shareholders will receive approximately 0.502 shares of ILPT for every one share owned of SIR.  Based upon closing prices on September 14, 2018, SIR shareholders will receive $11.69(3) per share from the ILPT share distribution and $17.57(4) per share in GOV for a total of $29.26 per share.

OPI expects to pay an annual dividend between $0.50 and $0.60 per share, which is based upon a target dividend payout ratio of 75% of projected cash available for distribution.  There is no plan to change the current dividend at GOV or SIR prior to closing.

OPI expects to sell properties valued at up to $750 million to reduce leverage to a target debt to Adjusted EBITDA ratio of 6.0x to 6.5x within six months of the closing of the merger.

The transaction is expected to close in late 2018 or early 2019, subject to customary closing conditions, including GOV and SIR shareholder approval.

(3)    The ILPT share price of $23.26 as of September 14, 2018 multiplied by 0.502457. The actual per share amount of the SIR distribution will depend upon the trading price of ILPT at the time of distribution.

(4)    The GOV share price of $16.89 as of September 14, 2018 multiplied by 1.04. The per share amount of the GOV shares received by SIR shareholders in the merger will depend upon the trading price of GOV at the closing of the merger.

**The Registration Statement Contains Material Misstatements and Omissions**

40.     The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to SIR's stockholders.  The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

41.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) SIR's and GOV's financial projections, relied upon by the Company's financial advisor, UBS, in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by UBS; (iii) the background process leading to the Proposed Transaction; and (iv) UBS's potential conflicts of interest.  Accordingly, SIR stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning SIR's and GOV's Financial Projections*

42.     The Registration Statement is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

43.     First, the Registration Statement omits material information regarding SIR management's financial projections that were provided to and relied upon by the Company's financial advisor UBS in connection with its financial analyses.

44.     For example, in connection with UBS's *Discounted Cash Flow Analysis* ("DCF") of SIR excluding ILPT, the Registration Statement states:

> *SIR excluding ILPT.*   UBS calculated a range of implied present values (as of June 30, 2018) of the standalone unlevered free cash flows that SIR excluding ILPT was forecasted to generate from June 30, 2018 through the end of fiscal year 2021 and of terminal values for SIR excluding ILPT. Implied terminal values were

derived by applying to SIR excluding ILPT's estimated 2022 Adjusted EBITDA a range of forward multiples of 12.0x to 14.0x. UBS selected the range of forward EBITDA multiples based on its professional judgment and expertise. Present values of cash flows and terminal values were calculated using discount rates ranging from 7.5% to 8.5%, based on a range of SIR excluding ILPT's weighted average cost of capital estimated by UBS. UBS then added to the range of present values it derived for SIR excluding ILPT the market value of the shares of class A common stock of RMR Inc. owned by SIR, based on the closing price of such shares as of September 12, 2018 and subtracted the net debt as of June 30, 2018. The discounted cash flow analysis resulted in a range of implied equity values for SIR excluding ILPT of $10.31 to $14.97 per SIR Common Share.

Registration Statement at 121.  The Registration Statement fails, however, to disclose: (i) the Company's standalone unlevered free cash flows that SIR excluding ILPT was forecasted to generate from June 30, 2018 through the end of fiscal year 2021; (ii) the definition of unlevered free cash flows; and (iii) the line items used to calculate SIR's unlevered free cash flows, utilized by UBS in its DCF of SIR excluding ILPT.

45.    Second, the Registration Statement omits material information regarding GOV management's financial projections that were provided to and relied upon by UBS in connection with its financial analyses.

46.    For example, in connection with UBS's DCF of GOV, the Registration Statement states:

*GOV.*   UBS calculated a range of implied present values (as of June 30, 2018) of the standalone unlevered free cash flows that GOV excluding a certain property of GOV was forecasted to generate from June 30, 2018 through the end of fiscal year 2021 and of terminal values for GOV. Implied terminal values were derived by applying to GOV's estimated 2022 Adjusted EBITDA a range of forward EBITDA multiples of 13.5x to 16.0x. UBS selected the range of forward EBITDA multiples based on its professional judgment and expertise. Present values of cash flows and terminal values were calculated using discount rates ranging from 7.0% to 8.0%, based on a range of GOV's weighted average cost of capital estimated by UBS. UBS then added the present value of a certain property of GOV, calculated based on the unlevered free cash flows that the property was forecast to generate through to the end of fiscal year 2026 to capture the fully stabilized financials from the repositioning of the property, and utilizing a range of forward multiples of 13.5x to 16.0x and discount rates ranging from 7.0% to 8.0%. UBS then added to the range

of present values it derived for GOV the market values of the shares of class A
common stock of RMR Inc. and SIR Common Shares owned by GOV, based on
the closing prices of such shares as of September 12, 2018 and then subtracted the
net debt as of June 30, 2018. The discounted cash flow analysis of GOV resulted in
a range of implied equity values of $12.21 to $16.82 per GOV Common Share.

*Id.* The Registration Statement fails, however, to disclose: (i) the standalone unlevered free cash

flows that GOV excluding a certain property of GOV was forecasted to generate from June 30,

2018 through the end of fiscal year 2021 utilized by UBS in its DCF of GOV; (ii) the unlevered

free cash flows that the certain property was forecast to generate through to the end of fiscal year

2026; (iii) the definition of unlevered free cash flows; and (iv) the line items used to calculate

GOV's unlevered free cash flows, utilized by UBS in its DCF of GOV.

47.    Third, the Registration Statement omits material information regarding the pro

forma combined company's financial projections that were provided to and relied upon by UBS

in connection with its financial analyses.

48.    For example, in connection with UBS's DCF of the pro forma combined

company, the Registration Statement states:

*Pro Forma Combined Company.* UBS calculated a range of implied present
values (as of June 30, 2018) of the unlevered free cash flows that the pro forma
combined company excluding a certain property of GOV was forecasted to generate
from June 30, 2018 through the end of fiscal year 2021 and of terminal values for
the pro forma combined company, including certain cost savings estimates
prepared by the management of SIR. Implied terminal values were derived by
applying to the pro forma combined company's estimated 2022 Adjusted EBITDA
a range of forward EBITDA multiples of 12.75x to 15.0x. UBS selected the range
of forward EBITDA multiples based on its professional judgment and expertise.
Present values of cash flows and terminal values were calculated using discount
rates ranging from 7.0% to 8.0%, based on an estimated range of the pro forma
combined company's weighted average cost of capital. UBS then added the present
value of a certain property of GOV, calculated based on the unlevered free cash
flows that the property was forecast to generate through to the end of fiscal year
2026 to capture the fully stabilized financials from the repositioning of the property,
and utilizing a range of forward multiples of 13.5x to 16.0x and discount rates
ranging from 7.0% to 8.0%. UBS then added to the range of present values it
derived for the pro forma combined company the market values of the shares of

class A common stock of RMR Inc. and SIR Common Shares owned by SIR and GOV, based on the closing prices of such shares as of September 12, 2018 and then subtracted the net debt as of June 30, 2018 and estimated transactions fees and expenses as provided by the management of SIR. The discounted cash flow analysis of the pro forma combined company resulted in a range of implied equity values of $11.87 to $16.72 per SIR Common Share.

*Id.* The Registration Statement fails, however, to disclose: (i) the unlevered free cash flows that the pro forma combined company excluding a certain property of GOV was forecasted to generate from June 30, 2018 through the end of fiscal year 2021; (ii) the definition of unlevered free cash flows; and (iii) the line items used to calculate the pro forma combined company's unlevered free cash flows, utilized by UBS in its DCF of the pro forma combined company.

49.     The omission of this information renders the statements in the "Certain Prospective Financial Information of GOV," "Certain Prospective Financial Information of SIR Excluding ILPT," and "Opinion of Financial Advisor to the SIR Special Committee" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

### *Material Omissions Concerning UBS's Financial Analyses*

50.     The Registration Statement describes UBS's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of UBS's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, SIR's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on UBS's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to SIR's stockholders.

51.     With respect to UBS's DCF of SIR excluding ILPT, the Registration Statement

fails to disclose: (i) the standalone unlevered free cash flows that SIR excluding ILPT was forecasted to generate from June 30, 2018 through the end of fiscal year 2021; (ii) SIR's net debt as of June 30, 2018; and (iii) quantification of the inputs and assumptions underlying the discount rate range of 7.5% to 8.5%.

52.    With respect to UBS's DCF of GOV, the Registration Statement fails to disclose: (i) the standalone unlevered free cash flows that GOV excluding a certain property of GOV was forecasted to generate from June 30, 2018 through the end of fiscal year 2021; (ii) the present value of a certain property of GOV, calculated based on the unlevered free cash flows that the property was forecast to generate through to the end of fiscal year 2026; (iii) GOV's net debt as of June 30, 2018; and (iv) quantification of the inputs and assumptions underlying the discount rate range of 7.0% to 8.0%.

53.    With respect to UBS's DCF of the pro forma combined company, the Registration Statement fails to disclose: (i) the unlevered free cash flows that the pro forma company excluding a certain property of GOV was forecasted to generate from June 30, 2018 through the end of fiscal year 2021; (ii) the pro forma combined company's estimated 2022 Adjusted EBITDA; (iii) the present value of a certain property of GOV, calculated based on the unlevered free cash flows that the property was forecast to generate through to the end of fiscal year 2026; (iv) net debt as of June 30, 2018 and estimated transactions fees and expenses as provided by the management of SIR; and (v) quantification of the inputs and assumptions underlying the discount rate range of 7.0% to 8.0%.

54.    With respect to UBS's *Selected Public Companies Analysis* for both SIR excluding ILPT and for GOV, the Registration Statement fails to disclose: (i) the individual multiples and financial metrics for each of the selected companies analyzed by UBS in the

analyses; and (ii) any benchmarking analyses for both SIR excluding ILPT and for GOV in relation to the target companies analyzed by UBS.

55.    With respect to UBS's *Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for each of the selected transactions analyzed by UBS in the analysis.

56.    When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

57.    The omission of this information renders the statements in the "Opinion of Financial Advisor to the SIR Special Committee," "Certain Prospective Financial Information of GOV" and "Certain Prospective Financial Information of SIR Excluding ILPT" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background Process of the Proposed Transaction***

58.    The Registration Statement omits material information relating to the sale process leading up to the Proposed Transaction.

59.    In connection with the SIR special committee's July 27, 2018 meeting, the Registration Statement sets forth that:

> the SIR special committee held a meeting via teleconference to receive a presentation prepared by UBS analyzing the potential combination of GOV and SIR, including preliminary financial analyses of SIR (on a standalone basis excluding ILPT) and GOV. The other members of SIR's board of trustees and members of SIR management attended the initial part of this meeting to hear the UBS presentation. After the other members of SIR's board of trustees and members of SIR management left the meeting, the SIR special committee and the representatives of UBS discussed the range of exchange ratios implied by the UBS analysis and the financial effect on SIR shareholders of the proposed transaction with GOV at various exchange ratios. After due and careful consideration, the SIR special committee authorized UBS to contact Citi and propose an exchange ratio of 0.9 of one SIR Common Share for each GOV Common Share.

Registration Statement at 84.  Yet, the Registration Statement fails to disclose whether the other members of SIR's Board and management were privy to the exchange ratio ranges included in UBS's preliminary financial analyses.

60.    This information is critical to determine whether the other members of SIR's Board and management who are entangled with GOV were appropriately walled off from receiving valuation information that could have impeded the SIR special committee's bargaining power to secure the best exchange ratio for its stockholders.

61.    The omission of this information renders the statements in the "Background of the Merger and Other Transactions" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Potential Conflicts of Interest of UBS***

62.    The Registration Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's financial advisor UBS.

63.    For example, the Registration Statement sets forth that:

> Under the terms of UBS' engagement, SIR agreed to pay UBS an aggregate fee of $10 million for its financial advisory services in connection with the Merger, of which $2 million was payable in connection with the delivery of UBS' opinion and the remaining $8 million is payable contingent upon consummation of the Merger. SIR has also agreed to reimburse UBS for certain expenses, including fees, disbursements and other charges of counsel, and indemnify UBS and related parties against liabilities, including liabilities under federal securities laws, relating to, or arising out of, its engagement. In the past, UBS and its affiliates have provided investment banking services to SIR, GOV, ILPT and RMR Inc., and certain of their respective affiliates, unrelated to the proposed transaction, for which UBS and its affiliates have received or will receive compensation, including in the past two years having acted as (i) joint bookrunner on a senior unsecured notes offering of SIR in May 2017, (ii) joint lead arranger on a bridge facility and joint bookrunner on a concurrent follow-on equity offering of GOV in June 2017, (iii) joint bookrunner on an unsecured notes offering of GOV in July 2017, (iv) financial advisor and dealer manager on a rights offering of RMR Real Estate Income Fund, a closed-end management investment company advised by a subsidiary of

RMR Inc., in September 2017, (v) joint bookrunner on a credit facility of ILPT in December 2017 and (vi) lead left bookrunner on ILPT's initial public offering in January 2018. In addition, UBS or an affiliate is a participant in credit facilities of SIR, GOV and ILPT for which it received and continues to receive fees and interest payments. In addition, in the future UBS may provide investment banking services to SIR, GOV, ILPT and RMR Inc. unrelated to the proposed transaction for which UBS may receive compensation. In the ordinary course of business, UBS and its affiliates may hold or trade, for their own accounts and the accounts of their customers, securities of SIR, GOV, ILPT and RMR Inc. and, accordingly, may at any time hold a long or short position in such securities.

*Id*. at 123.

64.     However, the Registration Statement fails to disclose the fees UBS and its affiliates have received for providing investment banking services to SIR, GOV, ILPT and RMR, and certain of their respective affiliates, unrelated to the Proposed Transaction, for which UBS and its affiliates have received or will receive compensation.

65.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

66.     The omission of this information renders the statements in the "Opinion of Financial Advisor to the SIR Special Committee" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

67.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement. Absent disclosure of the foregoing material information prior to the December 20, 2018 stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

68.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

69.    During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

70.    By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.  The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the actual intrinsic standalone value of the Company, GOV and the pro forma combined company, the financial analyses performed by the Company's financial advisor, the background of the process leading to the Proposed Transaction, and potential conflicts of interest of the Company's financial advisor UBS.  The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

71.    The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.

72.    By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

73.    Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.

Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

74.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

75.     The Individual Defendants acted as controlling persons of SIR within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of SIR and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

76.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

77.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Registration Statement.

78.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the

Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

79.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

80.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated  thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, SIR's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of SIR, and against defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to SIR stockholders;

C.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange

Act, as well as SEC Rule 14a-9 promulgated thereunder;

      E.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

      F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: November 15, 2018

                              Respectfully submitted,

                              /s/ Mitchell J. Matorin
                              Mitchell J. Matorin (BBO# 649304)
                              MATORIN LAW OFFICE, LLC
                              18 Grove Street, Suite 5
                              Wellesley, Massachusetts 02482
                              (781) 453-0100
                              mmatorin@matorinlaw.com

**OF COUNSEL:**

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly K. Moran
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato
885 Third Avenue, Suite 3040
New York, New York 10022
Tel: (212) 308-5858
Fax: (212) 486-0462
Email: fortunato@bespc.com

*Attorneys for Plaintiff*